UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALEXANDER B.,

                            Plaintiff,

                v.

KILOLO KIJAKAZI,[1] Acting Commissioner of
  Social Security,

                         Defendant.
_____

**DECISION
and
ORDER**

**20-CV-470F**
(**consent**)

APPEARANCES:       LAW OFFICES OF KENNETH R. HILLER, PLLC
                           Attorneys for Plaintiff
                           KENNETH R. HILLER, and
                           MELISSA MARIE KUBIAK, of Counsel
                           6000 North Bailey Avenue
                           Suite 1A
                           Amherst, New York  14226

                           JAMES P. KENNEDY, JR.
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York  14202
                                   and
                           NAHID SOROOSHYARI
                           Special Assistant United States Attorneys, of Counsel
                           Social Security Administration
                           Office of General Counsel
                           26 Federal Plaza
                           Room 3904
                           New York, New York 10278

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 6, 2021, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 18).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 22, 2021 2020 (Dkt. 15), and by Defendant on March 11, 2021 (Dkt. 16).

## BACKGROUND

Plaintiff Alexander B. ("Plaintiff"), brings this action seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on February 19, 2013, for Social Security Disability Insurance ("SSDI") under Title II of the Act, and on December 20, 2013, for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits").  Plaintiff alleges he became disabled on December 1, 2012, based on anxiety, panic attacks, depression, bipolar disorder, and mood swings.  AR[2] at 150, 167, 170.  Plaintiff's applications initially were denied on April 11, 2014, AR at 90-97, and at Plaintiff's timely request, AR at 98-101, on April 18, 2016, a hearing was held in Buffalo, New York before administrative law judge ("ALJ") Stephen Cordovani ("the ALJ").  AR at 31-60 ("first administrative hearing").  Appearing and testifying at the first administrative hearing were Plaintiff, represented by Michael Pretsch, Esq., and vocational expert ("V.E.") Joanne S. White.

On May 18, 2016, the ALJ denied Plaintiff's claim, AR at 13-30 ("first ALJ decision"), and Plaintiff timely filed a request for review of the first ALJ decision by the

---

[2] References to "AR" are to the page numbers of the Administrative Record Defendant electronically filed on November 12, 2020 (Dkt. 12).

Appeals Council, AR at 10.  On February 3, 2017, the Appeals Council denied Plaintiff's request for review of the first ALJ decision, AR at 1-4, thereby making the first ALJ decision the Commissioner's final determination on the claim at that time.  On April 4, 2017, Plaintiff commenced his first action in this court challenging the Commissioner's determination on the first claim, *Burkard v. Berryhill*, 17-CV-290EAW (W.D.N.Y.) ("first legal action").  The parties filed crossmotions for judgment on the pleadings and by Decision and Order filed July 31, 2018, Plaintiff's motion was granted with directions that the matter be remanded to the Commissioner for further proceedings.  AR at 729-47.  Accordingly, on October 29, 2018, the Appeals Council issued a Remand Order vacating the first ALJ decision and remanded the matter to the ALJ for further proceedings consistent with this court's order including a new administrative hearing. AR at 748-50.

In accordance with the Appeals Council's remand order, on October 24, 2019, a new administrative hearing was held in Buffalo, New York before the ALJ.  AR at 656-706 ("second administrative hearing").  Appearing and testifying at the second administrative hearing were Plaintiff, represented by Zachary Zabawa, Esq., and vocational expert Timothy P. Janikowski ("the VE"), appeared by telephone.  On December 27, 2019, the ALJ issued an unfavorable decision ("second ALJ decision"). AR at 634-655.  Plaintiff did not file for review by the Appeals Council, but on April 21, 2020, commenced the instant action seeking judicial review of the second ALJ decision.

On January 22, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 15 ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 15-1) ("Plaintiff's Memorandum").  On March 11,

2021, Defendant moved for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief (Dkt. 16-1) ("Defendant's Memorandum").  Filed on April 1, 2021 was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED; the Clerk of Court is directed to close the file.

## FACTS[3]

Plaintiff Alexander B. ("Plaintiff"), born June 22, 1991 was 21 years old as of his alleged disability onset date ("DOD") of December 1, 2012, and 28 as of December 27, 2019, the date of the second ALJ decision.  AR at 150, 648.  Plaintiff lived in a house with his family.  AR at 181, 661.  Plaintiff attended high school in regular classes, dropped out in 2017, and received a general equivalency degree ("GED"), but has completed no further jobs training or vocational programs.  AR at 39, 43, 46, 171, 537. Plaintiff's work history includes delivering fast food and newspapers, working as a food preparer and at customer service call centers, but Plaintiff quit working each job because of emotional issues.  AR at 177, 537, 699-700.  Plaintiff has a driver's license, is able to drive, and drives two to three times a week for errands and to socialize.  AR at 661-62.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

It is undisputed that Plaintiff suffers from mental health impairments beginning with a childhood diagnosis of attention deficit disorder for which Plaintiff was medicated with Ritalin.  AR at 187, 227.  Plaintiff reports first experiencing anxiety and panic attacks in fourth grade.  AR at 538.  Since at least 2017, Plaintiff has treated with psychiatrist Christopher G. Martin, M.D. ("Dr. Martin"), with Suburban Psychiatrics Associates, who repeatedly diagnosed Plaintiff with bipolar disorder, depression, anxiety and panic attacks.  AR 332.

In connection with his disability benefits application, Plaintiff underwent several psychiatric evaluations.  In particular, state agency reviews of Plaintiff's medical records were completed by psychiatrist H. Tzetzo, M.D. ("Dr. Tzetzo") on July 2, 2013, AR at 62-71, and by psychologist M. Marks, Ph.D. ("Dr. Marks") on April 11, 2014.  AR at 72-82.  Plaintiff underwent consultative psychiatric evaluations by psychologist Christine Ransom, Ph.D. ("Dr. Ransom"), on April 7, 2014, AR at 537-40, and May 9, 2019.  AR at 1000-07.  On March 30, 2016, Plaintiff's long-term treating psychiatrist, Dr. Martin, completed a Mental Residual Functional Capacity Questionnaire.  AR at 626-30.  Because the form questionnaire largely consisted of boxes checked by Dr. Martin, with little explanations, the ALJ twice contacted Dr. Martin seeking explanation of his opinions, AR at 841-53, but Dr. Martin did not respond to either request.  AR at 646.

## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

In reviewing a final decision of the SSA, a district court "is limited to determining

whether the SSA's conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d

Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial

evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

"Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject

those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Bonet ex*

*rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec.*

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

*Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Thus, the issue is

not whether substantial evidence supports the claimant's argument, but "whether

substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B.*, 523 Fed.Appx. at

59.

## 2.      Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI

benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable

regulations set forth a five-step analysis the Commissioner must follow in determining

eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v.*

*Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

1982).  The five steps include (1) whether the plaintiff is currently engaged in substantial

gainful activity, 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has

at least one severe impairment limiting his mental or physical ability to perform basic

work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's

severe impairments, considered together, meet or equal a listing in 20 C.F.R. Part 404,

Subpt. P, Appendix 1 of the regulations, and meet the duration requirement of at least

12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§

404.1520(d) and 416.920(d), (4) whether the plaintiff, despite his collective impairments,

retains the "residual functional capacity ("RFC") to perform his past relevant work

("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot

perform his PRW, whether any work exists in the national economy for which the

Plaintiff, given the applicant's age, education, and past work experience, "retains a

residual functional capacity to perform. . . ." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through March 31, 2013, AR at 639, Plaintiff has not engaged in SGA since December 1, 2012, his alleged disability onset date ("DOD"), *id.*, and has the severe impairments of bipolar disorder, panic disorder, anxiety disorder, and post traumatic stress disorder ("PTSD"), *id.* at 639-40, but that Plaintiff's other medically determinable conditions, including sleep apnea, hyperlipidemia, and irritable bowel syndrome ("IBS"), are not severe, *id.* at 640, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal in severity to a listed impairment. AR at 640-42. The ALJ further found that despite his impairments, Plaintiff retains the RFC for a full range of work at all exertional levels, with nonexertional limitations of understanding, remembering, and carrying out simple instructions and tasks, working in a low stress environment reflected by simple, unskilled work with no supervisory duties, no independent decision-making or goal setting, no production rate pace, minimal changes

in work routine and processes, occasional interaction with supervisors and co-workers, no or only incidental interaction with the general public, and performing no team, tandem, or codependent work.  AR at 642-46.  Plaintiff has no PRW, AR at 646, but given his age, education, ability to communicate in English, and RFC, and despite having no transferable skills from his PRW, is able to perform jobs existing in the national economy including as a laundry laborer, industrial cleaner, and linen room attendant.  AR at 646-47.  As such, the ALJ found Plaintiff was not disabled as defined under the Act at any time through the date of the second ALJ decision.  AR at 647-48.

In support of his motion, Plaintiff argues the ALJ erred at step three of the five-step sequential analysis by failing to provide good reasons for giving "little weight" to the disability-supporting decision of psychiatrist Dr. Martin who treated Plaintiff for more than ten years.  Plaintiff's Memorandum at 18-21, impermissibly "cherry-picked" evidence to support the decision to give Dr. Martin's opinion "little weight," *id*. at 21-25, and relied on inconsistencies between Dr. Martin's opinion and the opinions of the consultative psychiatric examiner Dr. Ransom.  *Id*. at 25-26.  In opposition, Defendant argues the ALJ's RFC determination is supported by substantial evidence, Defendant's Memorandum at 6-11, with the ALJ reasonably giving little weight to Dr. Martin's opinion, *id*. at 11-17.  In reply, Plaintiff argues the ALJ failed to follow this court's instructions on remand when weighing Dr. Martin's opinion that supports finding Plaintiff is disabled.  Plaintiff's Reply at 1-4.  Plaintiff's arguments are without merit.

Plaintiff's essentially is arguing Defendant, by failing to fully accept Dr. Martin's opinion which points toward finding Plaintiff disabled based on his mental impairments, has violated the so-called "treating physician rule" which provides that an opinion from a

treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Treating physician opinions, however, are determinative and granted controlling weight only when they are not inconsistent with other controlling evidence.  20 C.F.R. §§ 404.1527(d), 416.927(d). *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed.Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (treating physician opinions are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Where the ALJ fails to afford controlling weight to a treating physician's opinion, the ALJ is required to provide "good reasons" for the weight assigned to it and "explicitly consider" a number of factors set forth by the Second Circuit in *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).  The so-called "Burgess factors" include (1) the frequency,

length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Burgess*, 537 F.3d at 129. The Second Circuit instructs that "[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). Nevertheless, when the court's review of the record demonstrates that "the substance of the treating physician rule was not traversed" the ALJ's decision must be affirmed even when the ALJ did not "explicitly" consider each of the *Burgess* factors. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (citing *Halloran*, 362 F.3d at 32). *See also Holler v. Saul*, __ Fed.Appx. __, 2021 WL 1621304, *2 (2d Cir. 2021) ("[W]here . . . the ALJ provided a detailed explanation for her decision to give less than controlling weight to a treating physician's opinions, which we can easily understand from a review of the [record], the ALJ's failure to explicitly discuss each of the four factors . . . is not *per se* reversible error."); *Guerra v. Saul*, 778 Fed.Appx. 75, 77 (2d Cir. 2019) (although the ALJ did not explicitly consider the *Burgess* factors, the ALJ provided sufficient reasons for the weight assigned to the treating physician's opinion); *Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). In the instant case, the ALJ did not violate the treating physician rule by failing to afford controlling weight to Dr. Martin's opinion.

As relevant, on March 30, 2016, Dr. Martin completed a Mental Residual Functional Capacity Questionnaire ("MRFC Questionnaire"), AR at 626-30, on which Dr.

Martin indicated seeing Plaintiff for 15 minute sessions once every other month, and listed Plaintiff's primary diagnoses as mild panic and bipolar disorders for which Plaintiff had a "fair" response to treatment that included medication and symptom management. AR at 626.  Plaintiff's medications included Ambien (insomnia), Lithium (bipolar), Paxil (antidepressant), Risperdal (mood disorder), and Xanax (anxiety and panic disorder), and Plaintiff's medications caused some diarrhea.  *Id*.  Dr. Martin described Plaintiff's clinical findings as "mood unstable, depressed, anxious, attention span and concentration are fair."  *Id*.  On a list of symptoms, Dr. Martin checked boxes indicating Plaintiff's symptoms are decreased energy, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, paranoid thinking or inappropriate suspiciousness, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes), and sleep disturbance.  AR at 627. Plaintiff's psychiatric condition was not expected to exacerbate any pain or physical symptoms, *id*., but was expected to affect Plaintiff's ability to make occupational, performance and personal-social adjustments.[5]  *Id*. at 628-29.  In particular, with regard to occupational adjustments, Plaintiff was assessed as "fair" in his ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, and function independently, and as "poor" in his ability to deal with the public, deal with work stress, and maintain attention and concentration.  *Id*. at 628.  With regard to performance adjustments, Plaintiff was assessed with a "fair" ability to understand, remember, and

---

[5] The MRFC Questionnaire describes an unlimited ability to function in a particular area as "good," an occasional impairment, meaning up to 1/3 of a workday, as "fair," a low level of functioning, meaning an impairment for 1/3 to 2/3 of a workday as "poor," and no useful ability to function in a particular area as "none."  AR at 627.

carry out both detailed but not complex job instructions, and simple job instructions, and a "poor" ability to understand, remember, and carry out complex job instructions.  *Id*. at 629.  As for making personal-social adjustments, Plaintiff was assessed with a "fair" ability to maintain personal appearance," and a "poor" ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  *Id*.  Plaintiff was not expected to be able to work in the same general area as others, *id*., but his condition was not expected to deteriorate if Plaintiff engaged in full-time employment, *id*., and on the portion of the questionnaire asking for an estimate as to what percentage of a workday, ranging from 75% to 100% Plaintiff would be able to engage in work tasks involving, 2, 3 and 4 or more steps, Dr. Martin wrote "N/A."  *Id*. Dr. Martin estimated Plaintiff's psychiatric impairment would cause Plaintiff to be absent from work four or more days a month.  *Id*. at 630.  In giving Dr. Martin's opinion "little weight," AR at 645-46, the ALJ did not err because all four *Burgess* factors were considered, and Dr. Martin's opinion is inconsistent with his own treatment records as well as other substantial evidence in the record including Dr. Ransom's consultative opinions and the evaluations of Drs. Tzetzo and Marks, as well as Plaintiff's own description of his activities of daily living.

    Specifically, with regard to the *Burgess* factors, the ALJ acknowledged Dr. Martin is Plaintiff's treating physician with a "longitudinal treatment history."  AR at 646.  The ALJ found, however, Dr. Martin's opinion inconsistent with his treatment notes documenting Plaintiff with a normal mental status despite worsening mood and anxiety. AR at 646.  For example, on December 4, 2012, despite increasing anxiety, Plaintiff denied psychiatric symptoms and described himself as "o.k."  AR at 334.  On November

12, 2013, Plaintiff reported increased depression, stating he "could be better," yet Dr. Martin documented Plaintiff with appropriate affect and mood, coherent thought processes, intact memory, normal attention span and concentration, and intact judgment and insight. *Id*. at 385.  Further, these discrepancies between Dr. Martin's treatment notes and his findings as indicated by checking boxes on the MRFC Questionnaire caused the ALJ to twice contact Dr. Martin and request explanations by Dr. Martin regarding such discrepancies, but Dr. Martin did not respond to the requests. AR at 646 (citing AR at 841-52).  These unexplained inconsistencies support the ALJ's decision not to grant Dr. Martin's opinion controlling weight.  *See Rusin v. Berryhill*, 726 Fed.Appx. 837, 839 (2d Cir. 2018) (no error in declining to afford controlling weight to the opinion of plaintiff's treating physician when it was inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and plaintiff's reported activities of daily living).

Furthermore, as the ALJ observed, the opinions of Drs. Ransom, Tzetzo, and Marks are inconsistent with Dr. Martin's opinion.  In particular, at consultative psychiatric evaluations by Dr. Ransom on April 7, 2014, AR at 537-40, and May 9, 2019, AR at 1000-07, Plaintiff's mental status examination was essentially normal with intact attention and concentration, and recent and remote memory, average intellectual functioning, and good insight and judgment.  AR at 538-39, 1000-02.  On April 7, 2014, Dr. Ransom diagnosed Plaintiff with mild to moderate bipolar and anxiety disorders which were expected to cause mild to moderate difficulty performing complex tasks, mild difficulties with simple tasks, and to mildly to moderately interfere with Plaintiff's ability to function on a daily basis.  AR at 539-40.  On May 9, 2019, Dr. Ransom

diagnosed Plaintiff with mild panic disorder, and bipolar disorder with mild residual symptomology, which was not expected to interfere with Plaintiff's ability to function, including performing productive work activity on a daily basis.  AR at 1002-03.  In connection with the May 9, 2019 consultative examination, Dr. Ransom also completed a Medical Statement of Ability To Do Work-Related Activities (Mental), indicating Plaintiff, based on his mild anxiety and mild residual symptomology of his bipolar disorder, had either no or only mild limitations to perform various mental work-related activities, *id.*, at 1004-05, and that such limitations would not interfere with Plaintiff's ability to maintain concentration, persistence, or pace in a work setting or the ability to manage and adapt himself to the work environment.  AR at 1005.  Similarly, on July 2, 2013, and April 11, 2014, Dr. Tzetzo and Dr. Marks, respectively, upon reviewing Plaintiff's medical evidence of record, found Plaintiff with some mild and moderate limitations attributed to Plaintiff's mental impairments of bipolar disorder and anxiety disorder, yet determined such impairments did not render Plaintiff unable to perform a range of simple, unskilled work.  AR at 62-71, 72-82.

Significantly, a consultative examiner's opinion may override the opinion of a treating physician and may constitute substantial evidence that the ALJ can rely on to determine claimant's RFC when the opinion is supported by the record.  *See Trepanier v. Comm'r of Soc Sec. Admin.*, 752 Fed.Appx. 75, 78 (2d Cir. 2018) (ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); *Netter v. Astrue*, 272 Fed.Appx. 54, 55-56 (2d Cir. 2008) (report of a consultative physician may override opinion of a treating physician when it is supported by substantial evidence); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)

(it was within the province of the ALJ to resolve contradictions between the consultative examinations findings and the consultative examiner's conclusions); *Mongeur v. Heckler*, 722 F. 2d 1033, 1039 (2d Cir. 1983) (report of a consultative examiner may constitute substantial evidence to contradict the opinion of a treating physician).  *See also Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) (the opinions of non-examining sources such as state agency review physicians can constitute substantial evidence in support of an ALJ's decision).

The ALJ also considered the daily activities Plaintiff described as inconsistent with the claimed degree of limitation posed by his mental impairments, especially Plaintiff's travel to attend various entertainment events including Buffalo Bills football games, Buffalo Sabres hockey games, a rock concert in Toronto, trips to a casino, a trip to South Carolina to attend a soccer game, a trip to visit a friend in Corning, New York, and trips to Boston and Orlando to attend UFC fights, as well as the ability to drive two to three times a week to run errands and socialize with friends.  AR at 645.  The ALJ furthermore considered Plaintiff's numerous work attempts, which Plaintiff maintained were unsuccessful because Plaintiff was unable to interact with the public, co-workers, and supervisors.  *Id*.  *See Lovell v. Colvin*, 137 F.Supp.3d 347, 354 (W.D.N.Y. 2015) (no remand necessary where ALJ rejects the plaintiff's subjective complaints based on the plaintiff's own expressed desire to work such that the ALJ did not abuse his discretion in determining the plaintiff's testimony was not entirely credible).  Of further significance in this case is that the hypothetical the ALJ posed to VE Janikowski at the second administrative hearing included only incidental or occasional ability to work with the public, co-workers and supervisors.  AR at 802-04.  *See McIntyre v. Colvin*, 758 F.3d

146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and [the assumptions] accurately reflect the limitations and capabilities of the claimant involved.").

Accordingly, substantial evidence in the record supports the ALJ's failure to give Dr. Martin's opinion controlling weight, as well as the ALJ's determination, based on the ALJ's reliance based on the consultative examiner's finding, and Plaintiff's extensive activities of daily living, that Plaintiff is not disabled.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 15) is DENIED; Defendant's Motion (Dkt. 16) is GRANTED.  The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 28th, 2021
            Buffalo, New York